IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AHMED BAKRAN | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| JEH JOHNSON, ET AL. | : | No. 15-127 |

## MEMORANDUM

**Padova, J.**                                                                                    **June 28, 2016**

Plaintiff Ahmed Bakran, a United States citizen, commenced this action to challenge the denial of a Form I-130 immigrant visa petition that he filed on behalf of his new wife, seeking to have her designated as an immediate relative.   Both Bakran and Defendants have filed Motions for Summary Judgment.   For the following reasons, we grant Defendants' Motion, deny Bakran's Motion and enter judgment in favor of Defendants on all of Bakran's claims.

## I.      BACKGROUND

The undisputed facts are as follows.   Bakran is a United States citizen who, in 2004, pleaded guilty to one count of aggravated indecent assault in violation of 18 Pa. Cons. Stat. Ann. § 3125, and one count of unlawful contact with a minor in violation of 18 Pa. Cons. Stat. Ann. § 6318.   (Concise Statement of Stipulated Material Facts ("Stip. Facts"), at ¶¶ 1-2.)   He was sentenced to 11½ to 23 months of imprisonment, ten years' probation, and lifetime sex offender registration.   (Id. ¶ 2.)   In addition, as part of his criminal sentence, he was required to undergo a psychosexual evaluation and is prohibited from any unsupervised contact with minors.   (Id.) Bakran has complied with his sentence and has no prior or subsequent convictions.   (Id.)

Prior to 2006 and currently, the Immigration and Nationality Act (the "INA"), 8 U.S.C. § 1101 *et seq.*, generally permits that "any citizen of the United States claiming that an alien is entitled . . . to an immediate relative status under section 1151(b)(2)(A)(i) [including a citizen's

spouse] . . . may file a petition with the Attorney General for such classification."   8 U.S.C. § 1154(a)(1)(A)(i); see id. § 1151(b)(2)(A)(i) (stating that "the term 'immediate relatives' means the children, spouses, and parents of a citizen of the United States").   On July 27, 2006, however, the Adam Walsh Child Protection and Safety Act of 2006 (the "Walsh Act"), Pub. L. No. 109-248, 120 Stat. 587 (2006), amended the INA to bar any citizen convicted of a "specified offense against a minor" from filing any family-based immigration petition unless "the Secretary of Homeland Security, in the Secretary's sole and unreviewable discretion, determines that the citizen poses no risk to the alien with respect to whom [the] petition . . . is filed."   8 U.S.C. § 1154(a)(1)(A)(viii)(I).

On February 8, 2007, United States Citizenship and Immigration Services ("USCIS") issued a policy memorandum announcing a new legal standard for Walsh Act cases (the "Aytes Memo").   (Stip. Facts ¶ 9.)   The Aytes Memo created a standard whereby a petitioner subject to the Walsh Act must show "beyond a reasonable doubt" that they "pose no risk" to the beneficiary of the petition.   (Id.)   The Aytes memo did not undergo any notice and comment procedure and became effective the day USCIS issued it.   (Id.)

On September 24, 2008, USCIS issued another memorandum regarding Walsh Act cases (the "Neufeld memo").   (Id. ¶ 10.)   The Neufeld memo states that "approval recommendations should be rare" because of "the nature and severity of many of the underlying offenses."   (Id.)   The Neufeld memo, like the Aytes memo, did not undergo any notice and comment review.   (Id.)

In 2012, Bakran married Zara Qazi, a foreign national of India.   (Id. ¶ 4.)   Bakran has resided with Qazi since 2012, and they have one child together.   (Id.)   Qazi submitted sworn testimony to USCIS that she is aware of Bakran's conviction and the incidents surrounding it. (Id.)

On July 30, 2012, Bakran filed a Form I-130 immigrant visa petition ("I-130 Petition"), pursuant to the INA, 8 U.S.C. § 1151(b)(2)(A)(i), seeking to have Qazi classified as his immediate relative so that she could immigrate to the United States.   (Stip. Facts ¶ 5); see also 8 C.F.R. §§ 204.1(a)(1), 204.2(a)(1).   Qazi concurrently filed an I-485 application to adjust her status to a lawful permanent resident.   (Stip. Facts ¶ 5.)   On January 21, 2014, Bakran received from USCIS a "Request for Evidence/Notice of Intent to Deny" his I-130 Petition.   (Id. ¶ 6.)   In that Request for Evidence/Notice of Intent to Deny, USCIS informed Bakran that, pursuant to the Walsh Act, his 2004 convictions barred him from filing an I-130 petition on behalf of Qazi unless he could show that he posed no risk to her.   (Id. ¶ 6.)   USCIS afforded Bakran eighty-seven days to respond with evidence to meet that standard.   (Id.)   Bakran timely submitted records from his criminal case, notarized letters from family and friends attesting to his good character, a copy of his 2005 Sexuality Evaluation Study, his 2012 Psychosexual Evaluation, and a 2014 Psychological Report.   (Id. ¶ 7.)   However, after reviewing the totality of the evidence, on December 9, 2014, USCIS denied Bakran's I-130 petition and Qazi's I-485 application.   (Id. ¶ 8.)

Bakran filed his Complaint in this action on January 13, 2015.   The Complaint sets forth seven causes of action.   Count 1 asserts that that Defendants' application of the Walsh Act to deny Bakran' I-130 petition violated the Ex Post Facto Clause of Article I the United States Constitution.   Count 2 asserts that Defendants violated Bakran's due process right under the Fifth Amendment insofar as it burdens his constitutionally protected liberty interest in marriage.   Count 3 asserts that Defendants violated Bakran's right pursuant to the Fifth and Eighth Amendments to be free of excessive punishment.   Counts 4 and 5 assert that Defendants engaged in arbitrary and capricious conduct in violation of the Administrative Procedures Act (the "APA"), 5 U.S.C. § 701 et seq.   Count 6 asserts that Defendants engaged in rule-making regarding the Walsh Act without

following the APA's notice and comment procedures.   Count 7 asserts that the rules that Defendants issued regarding the Walsh Act were ultra vires, i.e., they were beyond USCIS's legislative authority.

Defendants previously filed a Motion to Dismiss Bakran's Complaint for lack of subject matter jurisdiction, which we denied in a Memorandum and Order entered on June 11, 2015. Both Bakran and Defendants have now filed Motions for Summary Judgment.   Defendants seek judgment in their favor on all seven Counts of the Complaint.   Bakran seeks judgment in his favor on all Counts except Count 4.

## II.   LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a).   An issue is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).   A factual dispute is "material" if it "might affect the outcome of the suit under the governing law." Id.

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."   Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).   Where the nonmoving party bears the burden of proof on a particular issue at trial, the movant's initial Celotex burden can be met simply by "pointing out to the district court" that "there is an absence of evidence to support the nonmoving party's case."   Id. at 325. After the moving party has met its initial burden, the adverse party's response "must support the assertion [that a fact is genuinely disputed] by: (A) citing to particular parts of materials in the

4

record . . . ; or (B) showing that the materials [that the moving party has cited] do not establish the absence . . . of a genuine dispute."   Fed. R. Civ. P. 56(c)(1).   Summary judgment is appropriate if the nonmoving party fails to respond with a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."   Celotex, 477 U.S. at 322.

## III.   DISCUSSION

### A.   Ex Post Facto (Count 1)

Count 1 of the Complaint asserts that Defendants' application of the Walsh Act to prohibit the filing of I-130 petitions by individuals with convictions of qualifying crimes against minors, absent a finding of "no risk," violates the Ex Post Facto clause in Article I of the Constitution when the petitioner, like Bakran, was convicted of his or her crime prior to enactment of the Walsh Act. Article I, Section 10 of the Constitution provides that "[n]o State shall . . . pass any . . . ex post facto Law . . . ."   U.S. Const. art. I, § 10, cl. 1.   An ex post facto law is one that "makes more burdensome the punishment for a crime, after its commission."   Dobbert v. Florida, 432 U.S. 282, 292 (1977) (quoting Beazell v. Ohio, 269 U.S. 167, 169 (1925)).   Accordingly, a law does not violate the Constitution's Ex Post Facto clause unless it is both punitive and retroactive.   See Weaver v. Graham, 450 U.S. 24, 29 (1981).   Defendants argue that judgment should be entered in their favor on this claim because the Walsh Act is neither retroactive nor punitive, while Bakran maintains that the Act is both retroactive and punitive.

### 1.   Punitive

In determining whether legislation is punitive, we first consider whether the legislation is civil or criminal.   Legislation that provides for criminal proceedings and penalties is punitive by its very nature.   See Kansas v. Hendricks, 521 U.S. 346, 361 (1997); Smith v. Doe, 538 U.S. 84,

91 (2003) ("If the intention of the legislature was to impose punishment, that ends the inquiry.")
When, on the other hand, Congress enacts legislation that it intends to be civil, we "'ordinarily
defer to the legislation's stated intent,'" but may nevertheless examine "whether the statutory
scheme is 'so punitive either in purpose or effect as to negate [the legislature's] intention to deem it
civil.'" Smith, 538 U.S. at 92 (quoting Hendricks, 521 U.S. at 361). Factors we may consider in
ascertaining whether a purportedly civil scheme is so punitive in purpose or effect to negate the
legislature's civil intent include whether the scheme "[1] has been regarded in our history and
traditions as a punishment; [2] imposes an affirmative disability or restraint; [3] promotes the
traditional aims of punishment; [4] has a rational connection to a nonpunitive purpose; or [5] is
excessive with respect to this purpose." Id. at 97 (citing Kennedy v. Mendoza-Martinez, 372 U.S.
144, 168-69 (1963)). However, "'only the clearest proof will suffice to override legislative intent
and transform what has been denominated a civil remedy into a criminal penalty.'" Id. at 92
(quoting Hudson v. United States, 522 U.S. 93, 100 (1997)).

The stated purpose of the Walsh Act is "[t]o protect children from sexual exploitation and
violent crime, to prevent child abuse and child pornography, to promote Internet safety, and to
honor the memory of Adam Walsh and other child crime victims." Pub. L. No. 109-248, 120 Stat.
587 (2006). Moreover, Title IV of the Walsh Act, which amends the INA, is entitled
"Immigration Law Reforms to Prevent Sex Offenders from Abusing Children," further
demonstrating an intent to protect children. Id. At the same time, the text of the Walsh Act
makes clear that it is ultimately designed to protect any beneficiary of a family-based immigration
petition, whether child or adult, as it provides that USCIS may only permit an individual convicted
of a qualifying offense against a minor to file such a petition if it determines that the individual
"poses no risk to the alien with respect to whom the petition . . . is filed" without differentiating

between adult and child beneficiaries.   8 U.S.C. § 1154(a)(1)(A)(viii)(I); see Struniak v. Lynch, Civ. A. No. 15-1447, 2016 WL 393953, at *10 (E.D. Va. Jan. 29, 2016) (concluding that the "plain and unambiguous language of § 1154(a)(1)(A)(viii)(I) applies to all beneficiaries," not only children).   Protecting individuals from sex offenders is plainly a legitimate civil objective as the Supreme Court has explicitly stated that "an imposition of restrictive measures on sex offenders adjudged to be dangerous is 'a legitimate nonpunitive governmental objective and has been historically so regarded.'"   Smith, 538 U.S. at 93 (quoting Hendricks, 521 U.S. at 363). Accordingly, we conclude that Congress's intent in enacting the Walsh Act was both civil and nonpunitive.

Bakran nevertheless argues that we should disregard this civil, non-punitive intent because the statute "'is so punitive either in purpose or effect as to negate [the legislature's] intention to deem it civil.'"   Smith, 538 U.S. at 92 (quoting Hendricks, 521 U.S. at 361).   Specifically, Bakran appears to argue that the Walsh Act imposes an "affirmative disability" insofar as it bars him from petitioning for his spouse; actually promotes a traditional aim of punishment, i.e., retribution for prior crimes; and does not protect children or the public, at least insofar as it was applied in his case, because the beneficiary of his petition was his adult wife.

In determining whether a statute imposes an affirmative disability, "we inquire how the effects of the Act are felt by those subject to it."   Smith, 538 U.S. at 99-100.   "If the disability or restraint is minor and indirect, its effects are unlikely to be punitive."   Id. at 100.   Here, the Act "imposes no physical restraint, and so does not resemble the punishment of imprisonment, which is the paradigmatic affirmative disability or restraint."   Id. (citing Hudson, 522 U.S. at 104). Moreover, its effects are plainly less harsh than those inflicted on sex offenders by sex offender registration and notification laws, which the Supreme Court has found not to impose an affirmative

disability. See id. at 99-102 (considering law requiring sex offenders to register with local law enforcement and providing for public access to central registry containing sex offenders' names, addresses and other identifying information). Indeed, Bakran has not developed any meaningful factual record as to how the Walsh Act's prohibition affects him and others, except to say that he is barred from petitioning on behalf of his wife. Under these circumstances, we cannot conclude that the Walsh Act imposes anything more than a minor disability, which does not support a conclusion that it is punitive rather than civil.

Bakran also argues that the purpose of the Walsh Act's prohibition on the filing of petitions is retributive, which is a traditional aim of punishment. We cannot, however, find any evidence in the summary judgment record to support such a conclusion. Indeed, as explained above, the Act, on its face, makes clear that its overriding purpose is to ensure public safety, as it only prohibits the filing of petitions by those who are deemed to pose a risk to the beneficiaries of the petitions. While Bakran perceives a punitive intent in the Act's decision to prohibit the filing of petitions on behalf of adult beneficiaries like his wife, who need no protection, "[a] statute is not deemed punitive simply because it lacks a close or perfect fit with the nonpunitive aims it seeks to advance." Id. at 103 (rejecting argument that a statute that is not narrowly drawn to accomplish its stated purpose is necessarily punitive). Moreover, we cannot simply accept Bakran's argument that his wife needs no protection, when USCIS was unable to conclude that Bakran posed "no risk" to his wife and we have no jurisdiction to review that determination. See 8 U.S.C. § 1154(a)(1)(A)(viii) (granting the Secretary of Homeland Security "sole and unreviewable discretion" to determine whether a petitioner poses "no risk" to the petition's beneficiary); see Bakran v. Johnson, Civ. A. No. 15-127, 2015 WL 3631746, at *3 (E.D. Pa. June 11, 2015) (explaining that no review is available where agency decision is "'committed to agency discretion

by law'" (quoting 5 U.S.C. § 701(a))).   Under all of these circumstances, we reject Bakran's

unsupported arguments that the Act serves no protective purpose and is retributive.

     In sum, Plaintiff has failed to submit "'the clearest proof'" that the purpose or effect of the

law negates the legislature's intention to establish a civil regulatory scheme.   Smith, 538 U.S. at

92 (quoting Hudson, 522 U.S. at 100).   Accordingly, we conclude that Bakran has failed to

establish that the Walsh Act is so punitive in purpose or effect that we should deem it to be a

criminal penalty.   Accord Suhail v. U.S. Att'y Gen., Civ. A. No. 15-12595, 2015 WL 7016340, at

*9 (E.D. Mich. Nov. 12, 2015) ("[A]pplication of the [Walsh Act] to [plaintiff] is not a penalty, but

rather a civil matter to prevent future additional sex offenses against children, complete with a

means by which the Secretary may override that protection.")

### 2.   Retroactive

     Generally, we presume legislation to have only prospective application.   Vartelas v.

Holder, 132 S. Ct. 1479, 1486 (2012) (citation omitted).   Moreover, the Supreme Court has

specifically stated that where a statute addresses dangers that arise after its enactment, it does not

operate retroactively.   Id. at 1489 n.7 (stating that "statutes do not operate retroactively [when]

they address dangers that arise postenactment").   For instance, the Court noted, a statute that

"prohibit[s] persons convicted of a sex crime against a victim under 16 years of age from working

in jobs involving frequent contact with minors" addresses a post-enactment danger and, thus, is not

retroactive.   Id.

     Here, the Walsh Act, like the statute limiting the job opportunities of prior sex offenders,

addresses a danger that arises post-enactment, i.e., the danger that a petitioner poses to the

proposed beneficiary of his family-based immigration petition.   Thus, contrary to Bakran's

understanding, the Walsh Act simply does not operate retroactively.   Reynolds v. Johnson, 628 F.

App'x 497, 498 (9th Cir. 2015) (concluding that the Walsh Act "'address[es] dangers that arise postenactment' and therefore 'do[es] not operate retroactively'" (alterations in original) (quoting Vartelas, 132 S. Ct. at 1489 n.7)); Matter of Jackson, 26 I. & N. Dec. 314, 318 (B.I.A. May 20, 2014) ("Because the Adam Walsh Act addresses the potential for future harm posed by . . . sexual predators to the beneficiaries of family-based visa petitions, we find that the application of its provisions to convictions that occurred before its enactment does not have an impermissible retroactive effect."); see also Naik v. Dir. U.S Citizenship & Immigration Servs. Vt., 575 F. App'x 88, 92 (3d Cir. 2014) (stating that the question of the Walsh Act's retroactivity "appear[s] to now be conclusively resolved by [the] . . . precedential opinion[] regarding the Walsh Act" in Matter of Jackson); accord Makransky v. Johnson, Civ. A. No. 15-1259, 2016 WL 1254353, at *6 (E.D.N.Y. March 29, 2016) ("[I]t is clear that the [Walsh Act] 'address[es] dangers that arise postenactment' and thus 'do[es] not operate retroactively.'" (third and fourth alterations in original) (quoting Vartelas, 132 S. Ct. at 1489 n.7, and citing Smith, 538 U.S. at 103); Burbank v. Johnson, Civ. A. No. 14-292, 2015 WL 4591643, at *7 (E.D. Wash. July 29, 2015) ("[T]he Adam Walsh Act provision regarding a no-risk determination is not a retroactive disability that attached to [plaintiff's] prior conviction; rather, the act protects aliens from convicted sex offenders and provides a means for the Secretary to override that protection when appropriate.")

In sum, we conclude, based on the summary judgment record before us, that the Walsh Act is neither punitive nor retroactive, and thus it does not violate the Constitution's Ex Post Facto clause.   Accordingly, we grant Defendants' Motion for Summary Judgment insofar as it seeks judgment in their favor on the Ex Post Facto claim in Count 1, and deny Bakran's Motion for Summary Judgment insofar as it seeks judgment in his favor on that same claim.

B. **Substantive Due Process (Count 2)**

Count 2 of the Complaint asserts that the Walsh Act's statutory prohibition on Bakran's filing of his I-130 petition on his wife's behalf violates his substantive due process rights under the Fifth Amendment because it impermissibly burdens his fundamental constitutional right to marriage.[1]  Bakran argues in his summary judgment motion that we should enter judgment in his favor on this claim, asserting that the fundamental right to marry incorporates the right to live with one's spouse, and that the Government's limitation on his ability to petition on behalf of his wife has deprived him of this fundamental right and cannot survive strict scrutiny, i.e., it is not the least restrictive means of advancing a compelling governmental interest.  Defendants argue in their cross-motion that we should enter judgment in their favor on this claim because the prohibition on Bakran's filing of a petition on behalf of his wife in no way infringes on Bakran's right to remain married to his wife but, rather, only restricts his right to reside with her, which is simply not a constitutionally-protected right.

The Supreme Court has interpreted the due process guarantees in the Constitution's Fifth Amendment "to include a substantive component, which forbids the government to infringe certain 'fundamental' liberty interests <u>at all</u>, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest."  <u>Reno v. Flores</u>, 507 U.S. 292, 301-02 (1993) (citations omitted).  One right that is "'so rooted in the traditions and conscience of our people as to be ranked as fundamental'" is the right to marry.  <u>Id.</u> at 303. (quoting <u>United States v. Salerno</u>, 481 U.S. 739, 751 (1987)).  Indeed, "[t]he freedom to marry

---

[1] Bakran's Complaint also appears to assert a procedural due process claim.  (<u>See</u> Compl. ¶¶ 69-72.)  However, Bakran has apparently abandoned that claim as he addresses only substantive due process in his Motion for Summary Judgment and Memorandum in Opposition to Defendants' Motion for Summary Judgment.  Moreover, we find no evidence in the record that Bakran was denied any procedural due process protections to which he was legally entitled.

has long been recognized as one of the vital personal rights essential to the orderly pursuit of happiness by free men." Loving v. Virginia, 388 U.S. 1, 12 (1967)

Here, however, it is undisputed that Bakran married his wife in 2012 and remains married to her.  (See Stip. Facts ¶ 4.)  Accordingly, Bakran's claim that the Walsh Act's restriction on his right to file an I-130 petition on his wife's behalf has infringed upon his right to marry is plainly meritless. See Makransky, 2016 WL 1254353, at *6 (rejecting claim that Walsh Act infringed upon plaintiff's constitutional right to marry, stating: "to be sure, [plaintiff] has a constitutional right to marry – and he has done just that"); see also Bains v. United States, Civ. A. No. 13-1014, 2014 WL 3389117, at *4 (N.D. Ohio July 9, 2014) (holding that plaintiff's "constitutional right to marry is not infringed upon by denying [an] immediate relative visa, as [plaintiff] and his wife were able to be married").

Bakran nevertheless contends that the fundamental right to marry incorporates a fundamental right to live with one's spouse, upon which the Government has impermissibly infringed.  However, precedent dictates that there is simply no such fundamental constitutional right.  As the United States Court of Appeals for the Third Circuit has observed, "[t]he Constitution 'does not recognize the right of a citizen spouse to have his or her alien spouse remain in the country.'" Fasano v. United States, 230 F. App'x 239, 240 (3d Cir. 2007) (quoting Bangura v. Hansen, 434 F.3d 487, 496 (6th Cir. 2006), and citing Burrafato v. U.S. Dep't of State, 523 F.2d 554, 555 (2d Cir. 1975)).  Moreover, district courts that have specifically considered whether the Walsh Act's restriction on the filing of family-based immigration petitions infringes upon the right to marry have concluded that it does not. See Burbank, 2015 WL 4591643, at *7 (rejecting substantive due process claim that the Walsh Act contravenes plaintiff's "fundamental right to marry and live with his spouse," because "it is undisputed that [plaintiff] has married his wife, such

that Defendants have not violated any fundamental right to marry" (citations omitted)); Suhail, 2015 WL 7016340, at *10 (rejecting claim that Walsh Act "unreasonably restricts Plaintiffs' marital rights and their constitutionally protected liberty interest in 'establishing a home' in the United States," because "U.S. citizens do not have a protected liberty interest in residing in the United States with their noncitizen spouses" (citations omitted)).

Furthermore, while Bakran extensively discusses the Supreme Court's recent plurality decision in Kerry v. Din, 135 S. Ct. 2128 (2015), that case actually supports our conclusion that judgment should be entered in Defendants' favor on Bakran's substantive due process claim.   In Din, the Supreme Court addressed a procedural due process claim by Fauzia Din, a United States citizen whose alien spouse's visa application was denied.   Din argued that "the Government denied her due process of law when, without adequate explanation of the reason for the visa denial, it deprived her of her constitutional right to live in the United States with her spouse."   Id. at 2131. In a plurality opinion, Justice Scalia, joined by Justices Roberts and Thomas, unequivocally opined that there is no constitutional right to live with one's spouse.   Id. ("There is no such constitutional right.")   Meanwhile, in a dissenting opinion, Justice Breyer, joined by Justices Ginsburg, Sotomayor and Kagan, opined that Din has a liberty interest in residing with her spouse, but that only procedural due process protections attach to that interest, and that it is not a fundamental interest that gives rise to substantive due process protections.   Id. at 2142 (citation omitted).   Accordingly, seven of the nine Justices clearly found there to be no fundamental constitutional right to live with one's spouse, [2] and thus recognized no constitutional right that

---

[2] In a concurring opinion in Din, Justice Kennedy, joined by Justice Alito, stated that "rather than deciding, as the plurality does, whether Din has a protected liberty interest [in residing with her spouse], my view is that, even assuming she does, the notice she received regarding her husband's visa denial satisfied [procedural] due process."   Id. at 2139.   Consequently, neither Justice Kennedy nor Justice Alito expressed an opinion as to whether there is a constitutional

could give rise to the substantive due process protections that Bakran seeks to enforce here.

For all of these reasons, we conclude that Bakran has no fundamental constitutional right to live with his spouse and further conclude that the Walsh Act does not infringe upon his fundamental constitutional right to marry. Accordingly, we grant Defendants' Motion for Summary Judgment insofar as it seeks judgment in their favor on the due process claim in Count 2, and deny Bakran's Motion for Summary Judgment insofar as it seeks judgment in his favor as to that same claim.

### C.   Excessive Punishment (Count 3)

Count 3 of the Complaint asserts that the Walsh Act, as interpreted by USCIS, violates Bakran's right to be free from constitutionally excessive punishment because it, in effect, banishes his spouse from the United States for life. Both Bakran and Defendants seek summary judgment on this claim.

For purposes of the Eighth Amendment, punishment includes "'a civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retribution or deterrent purposes.'" Austin v. United States, 509 U.S. 602, 610 (1993) (quoting United States v. Halper, 490 U.S. 435, 448 (1989)). Where, as here, we have concluded in connection with the Ex Post Facto analysis that the Walsh Act is "not 'punitive' in nature, 'the law is not a cruel and unusual punishment in violation of the Eight Amendment.'" Conover v. Main, 601 F. App'x 112, 115 (3d Cir. 2015) (quoting Doe v. Miller, 405 F.3d 700, 723 n.6 (8th Cir. 2005)); see also Makransky, 2016 WL 1254353, at *6 (holding that the Walsh Act does not impose excessive punishment because it is not punitive (citation omitted)). Consequently, we grant Defendants' Motion for Summary Judgment insofar as it seeks judgment in their favor on the

---

liberty interest in residing with one's spouse.

excessive punishment claim in Count 3, and deny Bakran's Motion for Summary Judgment insofar as it seeks judgment his favor on that same claim.

### D.    Arbitrary and Capricious Conduct (Counts 4 and 5)

In Counts 4 and 5, the Complaint asserts that Defendants acted arbitrarily and capriciously in violation of the APA by (1) interpreting the Walsh Act's prohibition on the "filing" of family-based immigration petitions by certain convicted individuals to permit USCIS to address the question of whether a petition should be approved or denied after it is successfully filed (Count 4), and (2) creating a presumption of denial of such petitions (Count 5).   Both Bakran and Defendants move for summary judgment on Count 5, but only Defendants move for judgment in their favor on Count 4.

Under the APA, we are to "hold unlawful and set aside agency action, findings, and conclusions" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). "To determine whether an agency acted arbitrarily and capriciously, a court looks to whether the agency relied on factors outside those Congress intended for consideration, completely failed to consider an important aspect of the problem, or provided an explanation that is contrary to, or implausible in light of, the evidence."   NVE, Inc. v. Dep't of Health & Human Servs., 436 F.3d 182, 190 (3d Cir. 2006) (citing Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co., 463 U.S. 29, 43 (1983)). "Generally, '[t]he scope of review under the arbitrary and capricious standard is narrow and a court is not to substitute its judgment for that of the agency.'"   Baugh v. Sec'y of Navy, 504 F. App'x 127, 130 (3d Cir. 2012) (alteration in original) (quoting State Farm, 463 U.S. at 43).    In the end, "[a]gency action may not be set aside on grounds that it is arbitrary and capricious if the action is rational, based on relevant factors, and within the agency's statutory authority."   Frisby v. U.S. Dep't of Hous. & Urban Dev., 755 F.2d

1052, 1055 (3d Cir. 1985) (citing State Farm, 463 U.S. at 42-43).

### 1.  Assessment of Risk After Filing

The Complaint asserts that USCIS acted arbitrarily and capriciously, and in excess of its statutory authority, in adjudicating already-filed petitions when the Walsh Act provides that individuals with specified convictions shall not be permitted to file family-based immigration petitions unless the no-risk requirement is satisfied.  See 8 U.S.C. § 1154(a)(1)(A)(i), (viii)(I). Specifically, the Complaint alleges that "[t]he plain language of the [Walsh Act] infers that, once USCIS accepted the I-130 as 'filed,' the [Walsh Act] no longer applies, and the agency's interpretation of the [Walsh Act] as requiring that properly filed I-130 visa petitions be 'denied' was arbitrary and capricious."  (Compl. ¶ 87.)  It further alleges that "USCIS does not have the authority to ignore the plain meaning of the statute" and that "[b]y considering [Walsh Act] petitions as 'filed,' the USCIS has fulfilled the requirement of Congress and any further action is ultra vires."  (Id. ¶ 90.)

However, the Neufeld Memo both acknowledges the statutory language on which Bakran relies and explains USCIS's determination to assess already-filed petitions.  Specifically, the Neufeld Memo explains: "The statute states that a petitioner convicted of any specified offense against a minor is prohibited from filing a family-based petition.   As a practical matter, however, we need to accept the petition and conduct the necessary analysis to determine whether the [Walsh Act] provisions apply."   (Neufeld Memo at 4, attached as Ex. 2 to Compl.)  We can only conclude that this determination is rational and within USCIS's statutory authority in light of the obvious practical difficulties inherent in creating a pre-filing procedure for assessing a prospective petitioner's criminal record and risk profile.  See Burbank, 2015 WL 4591643, at *8 (finding USCIS's explanation that, as a practical matter, it needed to accept the petition and then conduct

the necessary analysis to determine whether the Walsh Act provisions apply, to be a "much more reasonable interpretation" of the Act than the plaintiff's "technical reading of the law, which only would preclude petitioner from applying for an I-130 visa and would hamstring the USCIS from enforcing the provision after the agency had an opportunity to review a filed petition").   We therefore conclude that the summary judgment record does not support Bakran's claim that USCIS's post-filing procedures for the assessment of risk are arbitrary and capricious, and we grant Defendants' Motion for Summary Judgment insofar as it seeks judgment in their favor on Count Four of the Complaint.

### 2.    Presumption of Denial

The Complaint asserts that USCIS also acted arbitrarily and capriciously insofar as it created a presumption of denial of all Walsh Act petitions.   In this regard, Bakran notes that the Neufeld Memo provides that "approval recommendations" for petitions filed by individuals convicted of the specified offenses against minors "should be rare."   (Neufeld Memo at 2.)   He argues that there is no such presumption of denial in the statute, and thus the application of such a presumption is improper and unlawful.

However, as USCIS explains in the Neufeld Memo, it created the guidance that approval recommendations "should be rare" because of "the nature and severity of many of the underlying offenses and the intent of the [Walsh Act]," which is "to ensure that an intended alien beneficiary is not placed at risk of harm from the person seeking to facilitate the alien's immigration to the United States."   Id. at 2; Aytes Memo at 5; see also Neufeld Memo at 6.   Moreover, while the Walsh Act does not explicitly state that USCIS should employ any presumption, it is surely rational for USCIS to conclude that the burden must be on the petitioner to show that he or she poses no risk, and that a "no risk" determination should be the exception rather than the rule,

because the Act requires that USCIS deny the petition of an individual with a specified conviction "<u>unless</u> the Secretary of Homeland Security, in the Secretary's sole and unreviewable discretion, determines that the citizen poses no risk to the alien . . . .'"  8 U.S.C. § 1154(a)(1)(A)(viii)(I) (emphasis added).   Indeed, as another district court has observed, "[a]lthough the . . . Walsh Act does not expressly create a presumption of denial, it is permissible to construe from this language that the default rule is to deny petitions from a citizen who has been convicted of a specified offense and that deviations from that rule should be rare."   <u>Burbank</u>, 2015 WL 4591643, at *9; <u>see also</u> <u>Makransky</u>, 2016 WL 1254353, at *7 (stating that the "Aytes and Neufeld Memos make the reasonable conclusion that the default rule is to deny any petitions filed by a citizen convicted of [a qualifying offense]" (citing <u>Burbank</u>, 2015 WL 4591643, at *9)).

Accordingly, we conclude, based on the summary judgment record, that USCIS's guidance that approval recommendations "should be rare" is not arbitrary and capricious.   We therefore grant Defendants' Motion insofar as it seeks judgment in Defendants' favor on the claim in Count 5 of the Complaint, and deny Bakran's Motion insofar as it seeks judgment in his favor on that same Count.

**F.    Notice and Comment (Count 6)**

Count 6 of the Complaint asserts that Defendants violated the APA by engaging in rule-making regarding the Walsh Act without employing the notice and comment procedures that the APA requires.   <u>See</u> 5 U.S.C. § 553(b)-(c).   Both Bakran and Defendants seek summary judgment in their favor on this claim.

Under the APA, when an agency seeks to implement a "legislative" rule, which is a rule that imposes new duties and has the force and effect of law, it must follow the procedures under the APA.   <u>Chao v. Rothermel</u>, 327 F.3d 223, 227 (3d Cir. 2003) (citing <u>Beazer East, Inc. v. EPA</u>, 963

F.2d 603, 606 (3d Cir. 1992)).   Those required procedures include that the agency must provide general notice of the proposed rule in the Federal Register and give interested persons the opportunity to comment on the proposed rule.   Id. (citing Beazer, 963 F.2d at 606); 5 U.S.C. § 553(b)-(c).   Where, however, an agency seeks to enact an "interpretive" rule, which is a rule that merely interprets language already in a statute, the notice and comment procedures need not be followed.   Id. (citing 5 U.S.C. § 553 (b)(A)); see also Bailey v. Sullivan, 885 F.2d 52, 62 (3d Cir. 1989) ("If the rule in question merely clarifies or explains existing law or regulations, it will be deemed interpretive."); Perez v. Mortg. Bankers Ass'n, 135 S. Ct. 1199, 1206 (2015) (same).

Bakran contends that Defendants violated the notice and comment requirements in the APA's rule-making procedures when they issued the Aytes and Neufeld memos, which declare rules that (1) require petitioners to prove beyond a reasonable doubt that they pose no risk; (2) define risk under the Walsh Act as risk to the beneficiary's "safety and well-being," rather than merely a risk to physical safety; (3) created a presumption of denial for I-130 Petitions filed by individuals with convictions of sexual offenses against minors; and (4) interpreted the Walsh Act to govern the adjudication of petitions after they were successfully filed.

However, as another district court has correctly concluded, these rules do not impose new duties but, rather, "merely explain the statutory duties outlined in Section 1154."   Makransky, 2016 WL 1254353, at *8.   Indeed, as noted above, it is only logical and "reasonable that the USCIS must adjudicate already-filed petitions to determine whether the [Walsh Act] applies" rather than making a determination regarding the permissibility of the petition before the petition is even filed.   Id.   Likewise, "imposing a presumptive denial [and] a high burden of proof is [entirely] consistent with the construction of the [Walsh Act]," which demands that USCIS determine that the petitioner poses absolutely "no risk" to the beneficiary before permitting the

petitioner to pursue an I-130 petition.   Id.; see also Burbank, 2015 WL 4591643, at *10 ("[T]he heightened standard of proof and presumption of denial" are "interpretations [that] clarify the USCIS's application of its broad discretion rather than make new law." (citation omitted)). "Further, requiring the petitioner to prove that he poses no risk to the 'safety or well-being' of the intended beneficiary is [surely] a fair interpretation of Section 1154's [no risk] language." Makransky, 2016 WL 1254353, at *8 (citing Burbank, 2015 WL 4591643, at *10); see also Burbank, 2015 WL 4591643, at *10 ("USCIS's consideration of the risk 'to the safety or well-being' of a beneficiary is consistent with Congress's instruction to the agency to determine whether a citizen posed no-risk to the alien," and thus does "not amend the statute but instead explain[s] the agency's interpretation of it.")

Accordingly, we conclude that the rules at issue are interpretive rules that are not subject to the APA's notice and comment procedures, rather than substantive rules for which such procedures are mandated.   We therefore grant Defendants' Motion insofar as it seeks judgment in their favor on the claim in Count 6 that they violated the APA by not submitting the challenged rules for notice and comment, and we deny Bakran's Motion insofar as he seeks judgment in his favor on that same claim.

### G.   Ultra Vires Regulation (Count 7)

Count 7 of the Complaint asserts that the Defendants violated the APA by issuing an ultra vires rule, i.e., a rule that is beyond Defendants' legislative authority.   Specifically, Bakran asserts that USCIS did not have the authority to require petitioners to prove "beyond a reasonable doubt" that they pose no risk to the beneficiaries of the petitions, when the Walsh Act does not specify a "beyond a reasonable doubt" standard.   Both Bakran and Defendants seek judgment in their favor on this claim.

20

The Supreme Court, in Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., set forth a two–step analysis for determining whether an agency acted in an ultra vires fashion. 467 U.S. 837, 842-43 (1984). "First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter . . . ." Id. However, "[i]f the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." Id. at 843.

Here, the Walsh Act does not delineate the specific standard of proof that USCIS should use in making its "no risk" determination. Nonetheless, as noted repeatedly, the Act clearly states that family-based immigration petitions should only be allowed where USCIS determines that the petitioner poses "no risk" to the alien beneficiary, and the assessment of risk is left to USCIS's "sole and unreviewable discretion." 8 U.S.C. § 1154(a)(1)(A)(i), (viii)(I). Under these circumstances, it is certainly a permissible construction of the statute for USCIS to require petitioners to meet a high burden of proof in establishing that they pose no risk. Suhail, 2015 WL 7016340, at *10 ("'[T]he . . . Walsh Act's instruction that a family-based visa petition should be allowed . . . only where the citizen poses no-risk, and the delegation of that judgment to the sole and unreviewable discretion of agencies, supports the USCIS' understanding that the factual showing should be high.'" (quoting Burbank, 2015 WL 4591643, at *9)); see also Makransky, 2016 WL 1254353, at *7 (quoting Burbank, 2015 WL 4591643, at *9).

In sum, we conclude, based on the record before us, that USCIS's adoption of a beyond the reasonable doubt standard was not ultra vires. Consequently, we grant Defendants' Motion insofar as they seek judgment in their favor on Count 7, and we deny Bakran's Motion insofar as he seeks judgment in his favor on the same claim.

**IV.    CONCLUSION**

For the foregoing reasons, we grant Defendants' Motion for Summary Judgment and deny Bakran's Motion for Summary Judgment.    We therefore enter judgment in favor of Defendants and against Bakran on all of Bakran's claims.    An appropriate Order follows.

BY THE COURT:

/s/ John R. Padova, J.
_____
John R. Padova, J.